UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KRISTEN DEMARJIAN,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD ARNOLD *et al.*,<br><br>Defendants. | CAUSE NO. 3:26cv43 DRL-SJF |

OPINION AND ORDER

Visitors of a prison do not leave all their constitutional rights, along with their personal belongings, at the facility's entrance, much less lose their desire to communicate with loved ones inside. Kristen Demarjian, proceeding *pro se*, sues Indiana Department of Correction (IDOC) officials Lloyd Arnold, William Wilson, Brian English, and Kelsi Williams in their official capacities under 42 U.S.C. § 1983. She challenges their revocation of various video and messaging communication privileges with her partner, Gustav Ryburn, a current inmate.

In an amended complaint, she advances First Amendment claims (retaliation and freedom of association) and a Fourteenth Amendment claim (due process). IDOC officials move to dismiss the amended complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The court denies the Rule 12(b)(1) motion (and a request to strike) but grants the Rule 12(b)(6) motion to dismiss the association and due process claims.

BACKGROUND

The court reads Ms. Demarjian's *pro se* amended complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and takes her allegations as true for purposes of deciding these requests to dismiss. Ms. Demarjian, who currently resides in California, has maintained a long-term

committed relationship with Mr. Ryburn, an inmate at Miami Correctional Facility, since September 2022 [4 ¶ 13]. Until September 2025, Ms. Demarjian communicated with him by telephone, video visitation or messages, electronic messaging, and photographs.

Beginning in December 2023, Ms. Demarjian contacted IDOC officials about issues affecting Mr. Ryburn's ongoing incarceration [*id.* ¶ 15]. The following May, her video visits began to fail or were reassigned to housing units where Mr. Ryburn wasn't located, and she stopped scheduling them in March 2025 after the problems were not corrected [*id.* ¶ 17-18]. She alleges that later that fall (September 2025) her photograph and video messages to Mr. Ryburn were repeatedly denied [*id.* ¶ 19]. Miami's ACA/Policy Coordinator Kelsi Williams had discretionary authority over the denials. On September 8, Ms. Demarjian objected in writing to these denials, wanting to know the specific policy provisions she had violated [*id.* ¶ 22].

On September 24, Coordinator Williams transmitted a notice, signed by Warden Brian English, stating that Ms. Demarjian's telephone, video, and in-person visitation privileges with Mr. Ryburn were permanently revoked for "'threatening and harassing' communications" [*id.* ¶ 24-26]. The notice stated that Ms. Demarjian could appeal the ban to IDOC Commissioner Lloyd Arnold but offered little further explanation [*id.* ¶ 27]. She appealed on September 26.

On October 10, in lieu of a response from Commissioner Arnold, Ms. Demarjian received a response from IDOC Executive Director of Adult Facilities William Wilson, who said her revocation was a result of her "tone" and "perceived threats of stalking and harassment" toward IDOC staff [*id.* ¶ 31-33]. Director Wilson added that her communication privileges were not "fully restricted" because she retained privileges to write correspondence and electronic messaging; however, Ms. Demarjian viewed these as unreasonable substitutes. She wanted

synchronous communication with Mr. Ryburn because she was his "durable and medical power of attorney and emergency contact" [*id.* ¶ 36-37]. She alleges that the lack of synchronous communication "materially impaired" her "legally recognized responsibilities" toward Mr. Ryburn [*id.* ¶ 38].

Ms. Demarjian wrote a letter on November 1, 2025 asking Commissioner Arnold to review her appeal. She requested conduct reports, which IDOC provided to Mr. Ryburn a month later. On November 20, Coordinator Williams emailed Ms. Demarjian another notice, signed by Warden English, revoking her electronic messaging privileges with Mr. Ryburn for three months [*id.* ¶ 43]. Ms. Demarjian again says this notice failed to specify which policy she violated or a clear appeal mechanism [*id.* ¶ 44]. On January 22, 2026, IDOC restricted Ms. Demarjian's electronic messaging privileges for an additional six months for using another individual to communicate with Mr. Ryburn [*id.* ¶ 47]. She alleges that she wasn't provided with the specific message or communication leading to this penalty. Her sister was banned from communicating with Mr. Ryburn for three months because of this issue.

Ms. Demarjian alleges these actions caused her ongoing and irreparable harm. She says Coordinator Williams managed the revocation review and denial process, Warden English enforced it, Director Wilson allowed the deprivation to continue on appeal, and Commissioner Arnold failed to provide appellate review [*id.* ¶ 52]. She seeks the full restoration of her communication privileges along with declaratory relief and damages. In response, IDOC officials cast Ms. Demarjian's claims in this suit as yet another chapter in her ongoing saga to assert claims on behalf of Mr. Ryburn without standing (or a law license) to do so.

They urge the court to read Ms. Demarjian's most recent complaint alongside three other pertinent lawsuits. First, on June 12, 2025, Mr. Ryburn filed a complaint in Miami Superior Court seeking an emergency hearing, which was dismissed by both the trial court and Indiana Court of Appeals before the Indiana Supreme Court denied his petition to transfer because it was filed by Ms. Demarjian, a non-attorney. *Ryburn v. Doe*, No. 52D02-2506-CT-680 (Miami Sup. Ct. June 18, 2025); *Ryburn v. Doe*, No. 25A-CT-1529 (Ind. Ct. App. Oct. 7, 2025); *Ryburn v. Doe*, No. 25A-CT-1529 (Ind. Ct. App. Dec. 12, 2025). Second, on December 10, 2025, Ms. Demarjian filed a complaint as Mr. Ryburn's "next friend" in the Northern District of Indiana. Judge Cristal C. Brisco dismissed the case because Ms. Demarjian (as a non-lawyer) wasn't authorized to represent Mr. Ryburn. And third, on January 2, 2026, Mr. Ryburn filed his own civil rights case, which remains pending. *Ryburn II*, No. 3:26cv15 Dkt. 21 (N.D. Ind. Jan. 28, 2026)

Today, Ms. Demarjian asserts three counts under 42 U.S.C. § 1983—retaliation under the First Amendment, a violation of her speech and intimate association rights under the First Amendment, and a procedural due process claim under the Fourteenth Amendment. The defendants move to dismiss the first claim for a lack of standing under Rule 12(b)(1) and the remainder for failure to state a claim under Rule 12(b)(6).

## STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the

presumption of truth to their allegations. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). The court treats the Rule 12(b)(1) motion as a facial attack because, as soon explained, IDOC officials have not submitted pertinent evidence challenging subject matter jurisdiction, *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (factual challenge arises when "evidence pertinent to subject matter jurisdiction has been submitted"), and the prior lawsuits have no real bearing on the question of standing today.

In reviewing a Rule 12(b)(6) motion, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

## DISCUSSION

A. *Standing for First Amendment Retaliation (Count 1).*

Under the First Amendment, Ms. Demarjian contends that IDOC officials retaliated against her for filing formal complaints regarding how it administered its communication policies by revoking her video and in-person visitation and suspending certain other electronic communication privileges. To state a First Amendment retaliation claim, she must plausibly allege that she engaged in activity protected by the First Amendment, she suffered a deprivation that would likely deter such activity in the future, and that her activity was at least a motivating factor in the decision by IDOC officials to take retaliatory action. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "These basis elements are the same whether the plaintiff is a prisoner, a public employee, or any other person alleging that a government official targeted protected activity." *Id.*

Under Rule 12(b)(1), IDOC officials argue that Ms. Demarjian's prolific litigation history demonstrates how her First Amendment retaliation claim amounts merely to another attempt at recasting Mr. Ryburn's concerns about court and prison grievance access as her own injuries; and, as such, she lacks standing. Ms. Demarjian asserts that, as a non-incarcerated correspondent with Ms. Ryburn, her claims rest on her own legal injury after IDOC punished her for making complaints and objecting to the revocation of her communication privileges.

Article III of the United States Constitution requires a plaintiff to have standing—a personal stake in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also* U.S. Const. art. III § 2. Standing is an "essential ingredient" to the court's subject matter jurisdiction. *Bazile*, 983 F.3d at 278. To demonstrate standing, a plaintiff must show she "suffered an injury in fact that is concrete, particularized, and actual or imminent; that the injury was likely caused by the

defendant; and that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (cleaned up). She "must demonstrate standing for each claim that [she] presses and for each form of relief that [she] seeks." *Id.* at 431.

Given this, Ms. Demarjian must first point to a "concrete" injury that "actually exist[s]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). She cannot merely point to a third-party's injury and claim it as her own to establish standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013). "The [Article] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). She "bears the burden of establishing standing as of the time she brought the lawsuit and maintaining it thereafter." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quotations and citation omitted); *see Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("it must exist at the commencement of the suit").

IDOC officials don't really explain why Ms. Demarjian must be seen as only asserting Mr. Ryburn's injuries. They argue that her history of attempting to represent him intimates that she must not be pursuing her own interests here. They say Ms. Demarjian attached to a complaint in another case email communications with IDOC staff in which she appears to sign for him or as his attorney-in-fact. They likewise point out that she filed materials for him in his state case, including one of the supplemental filings she describes as leading to the revocation and suspension of her communication privileges.

But the court must assess this pleading. Ms. Demarjian doesn't complain about the restrictions placed on anyone other than her. She says her rights were violated when IDOC officials limited her ability to communicate. Indeed, her amended complaint spells out from the

beginning that it "challenges the permanent revocation of a *non-incarcerated citizen's* telephone and visitation privileges with her incarcerated life partner" [4 (emphasis added)]. Whether any restrictions may have impacted Mr. Ryburn is not seemingly the subject of this amended complaint, nor would she be positioned on this record to pursue relief for him; but she has demonstrated at this stage the essentials of her constitutional standing—her privileges were restricted in retaliation for her exercise of her First Amendment rights (injury), by the defendants (traceability), for which she seeks recourse through the court's remedial power (redressability).

At most, IDOC officials could challenge the merits of her First Amendment retaliation claim, but such a challenge would fit under Rule 12(b)(6). To proceed at this stage on a First Amendment retaliation claim, Ms. Demarjian must plausibly allege that "her speech was constitutionally protected." *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (citing *Spiegla v. Hull,* 371 F.3d 928, 940-41) (7th Cir. 2004)). No one disputes that Ms. Demarjian retained rights to speak and that she lost her communication privileges, or that she pleaded this loss plausibly. They only dispute whether she engaged in any protected speech because, to IDOC officials, this amended complaint should be seen as protesting Mr. Ryburn's limited access to the courts and conditions of confinement rather than her own injury. That is not a fair reading of this amended complaint, so the court must deny the Rule 12(b)(1) motion on this claim. To the extent that IDOC officials really seek to dismiss her claim on the merits, they have not articulated today a reason under Rule 12(b)(6) why she lacks a plausible First Amendment right against alleged retaliation in the form of revoked communication privileges because of her prior administrative complaints, and they disavow any intention of doing so. The court decides only arguments that

have been presented.[1] *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (party presentation rule); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (same); *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."). Ms. Demarjian thus may proceed on a First Amendment retaliation claim.

B. *First Amendment Association (Count 2).*

The First Amendment protects "certain kinds of highly personal relationships" and, outside the prison context, a "right to maintain certain familial relationships," including "association among members of an immediate family." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). An inmate by definition experiences incarceration, and "freedom of association is among the rights least compatible with incarceration," so "[s]ome curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131. A prison may deny visitation or otherwise restrict communication when it is rationally related to legitimate penological interests and other factors favor the restriction, including the availability of alternative means of communicating, not least letter writing. *See id.* at 132, 135 (weighing four factors); *Bilka v. Farrey*, 447 F. Appx. 742, 743 (7th Cir. 2011).[2]

[1] The court, in its discretion (rather than under Rule 12(f) when it pertains only to a "pleading"), denies the motion to strike Ms. Demarjian's argument that she plausibly articulated a First Amendment retaliation claim. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009); *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994); *see also* Fed. R. Civ. P. 7(a), 12(f). If nothing else, it clarified that IDOC officials were not presenting argument under Rule 12(b)(6), only Rule 12(b)(1), and reemphasized the focus on her own alleged injury.

[2] Both sides, at times, seem to mix freedom of association and freedom of intimate association. "[F]reedom of expressive association[] arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment," whereas "freedom of

In the amended pleading, Ms. Demarjian complains about the suspension of her real-time communications with Mr. Ryburn in September 2025, particularly telephone and video calls. She alludes to a suspension of visitation privileges too; but, living in California, she never plausibly alleges that she desired or endeavored to exercise her right of association in this manner. The facility told her in October 2025 that she could maintain communications through written correspondence and email. In November 2025, her email privileges were temporarily suspended for three months, thereafter extended for another six months in January 2026. She clarifies that some video access had been permitted by the summer.

IDOC officials propose a narrow reading of her amended complaint, focusing on the suspension of her telephone privileges. They argue that Ms. Demarjian fails to identify any authority supporting an associational right to a particular form of communication with Mr. Ryburn. Whether her amended complaint reads more broadly, Ms. Demarjian clarifies that she is not asserting an "unfettered constitutional right" to communicate through all means of prison visitation, telephone calls, video visits, or email; instead, she "challenges individualized restrictions imposed directly on her communications with her long-term partner after protected complaints and appeals, without specific notice, policy-based reasons, objective standards or meaningful review." She argues that "escalating restrictions" have been used as a "punishment lever" in response to her protected activity. In short, she protests the loss of real-time

---

intimate association[] protects the right to enter into and maintain certain intimate human relationships" and "is protected by the due process clauses." *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005). The latter has not been recognized to extend to someone who wants to visit a non-relative in prison. *See Bilka*, 447 F. Appx. at 744.

communication with Mr. Ryburn through the retaliation of prison officials after her administrative complaints.

As the master of her complaint, she may frame it just so, but this is a First Amendment retaliation claim, without need to duplicate it under the theorized rubric of association. *See, e.g., Henley v. Tullahoma City Sch. Sys.*, 84 F. Appx. 534, 543-44 (6th Cir. 2003) (association claim was duplicative of retaliation claim). The court appreciates the difference between claims and theories at this procedural stage. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). But an association claim (if analyzed like a prisoner claim) would require additional operative facts—plausibly for allegation now, and later to prove, as is her burden, the invalidity of the prison's decisions under four other considerations, including whether the decision rationally served a legitimate government interest, whether alternative means for exercising the right existed, what impact there might be to prison resources and operations, and whether ready alternatives existed to the decision. *See Overton*, 539 U.S. at 132. When the First Amendment provides an explicit source of constitutional protection against a particular sort of alleged retaliatory behavior, nothing is gained by attracting duplicative labels. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). Because she presents her First Amendment claim as one that sounds in retaliation, the court dismisses the duplicative associational claim. *See, e.g., Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) (dismissing duplicative claim under state law).

C. *Procedural Due Process (Count 3).*

To state a procedural due process claim, a plaintiff must allege they were deprived of a protected liberty or property interest and that the deprivation occurred without due process. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (citing *American Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999)). A prison restriction does not give rise to a protected liberty interest unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Prison restrictions must constitute "a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty under [this] doctrine." *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003). If the restriction does not implicate a protected liberty interest, then the plaintiff has no right to due process of law. *Id.* Although the vast majority of cases applying *Sandin* originate with a prisoner's complaint, "so far as challenges to prison regulations as infringing constitutional rights are concerned, the standard is the same whether the rights of prisoners or of nonprisoners are at stake." *Keeney v. Heath*, 57 F.3d 579, 581 (7th Cir. 1995).

In her amended complaint, Ms. Demarjian alleges that she was deprived of her First Amendment liberty interest in communicating with Mr. Ryburn and that IDOC officials failed to provide minimum procedural safeguards, such as promised appellate review from Commissioner Arnold, notice of the specific policy she violated, or a meaningful opportunity to contest the allegations before a neutral decisionmaker [*id.* ¶ 82]. In response, IDOC officials contend that Ms. Demarjian cannot clear the threshold hurdle for a due process claim because she had no liberty interest in real-time communications (in-person visitation, telephonic, or video) with Mr. Ryburn. The parties tee up two issues for the court: first, whether Ms. Demarjian has a

First Amendment right to communicate with Mr. Ryburn; and second, whether the deprivation of that right constitutes an atypical and significant hardship.

Under the *Sandin* standard, restrictions on prison visitations, particularly those imposed due to safety and security, do not generally constitute an atypical and significant deprivation given the normal incidents of prison life. *See Kentucky Dept. of Corrs.*, 490 U.S. 454, 461 (1989). "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence." *Id.* (quotations and citation omitted). It is "not independently protected by the Due Process Clause." *Id.* "It is imprisonment that robs a person of natural liberty—not exclusion from prison." *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989); *see also Frazier v. Levenhagen*, 2009 U.S. Dist. LEXIS 104662, 5-7 (N.D. Ind. Nov. 9, 2009) (Van Bokkelen, J.) (dismissing complaint because no due process right to contact visitation); *accord Williams v. Schomig*, 1997 U.S. Dist. LEXIS 7274, 4-9 (N.D. Ill. May 21, 1997) (Gottschall, J.) (finding at summary judgment no due process violation by barring visitation of inmate's "female friend"). By law, Ms. Demarjian has not plausibly alleged a protected liberty interest of this sort.

Read liberally, her complaint does not just assert a deprivation of her visitation rights but deprivation of other real-time means of communicating with an inmate. Prisoners have a qualified First Amendment right to communicate with individuals outside the prison that may be limited under *Turner v. Safley*, 482 U.S. 78 (1987). *See supra* (restating test); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution, nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'") (quotations, citations, and brackets omitted); *Lashbrook v. Hyatte*, 758 F. Appx. 539, 541 (7th Cir. 2019) (acknowledging that the First

Amendment permits reasonable telephone restrictions related to legitimate penological concerns even when the calls at issue are with counsel); *Boriboune v. Litscher*, 91 F. Appx. 498, 499 (7th Cir. 2003) (expressing doubt that a prisoner's First Amendment right to communicate with others outside the prison "amounts to an unqualified right for a prisoner to have access to a telephone"). Whether Ms. Demarjian could assert a liberty interest in real-time communications, she has not plausibly alleged an atypical or substantial hardship.

"Procedural regulations are not a source of constitutional entitlements." *Smith v. Shettle*, 946 F.2d 1250, 1254 (7th Cir. 1991). She must allege her right under the Constitution. The deprivations in certain means of communicating that befell her were not a total deprivation of her ability to communicate with Mr. Ryburn. Whether she might have a liberty interest in some means of communicating with a longtime boyfriend inside, she would be harder pressed to establish that she had a liberty interest, protected by due process, in a particular means of communicating; so, at the start, a deprivation of one or more means would not be viewed as an atypical or substantial hardship. *See, e.g.*, *Pell v. Procunier*, 417 U.S. 817, 826 (1974) ("So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, we believe that, in drawing such lines, prison officials must be accorded latitude."); *accord Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (though a complete prohibition on human contact, disqualification from parole consideration, and indefinite duration of punishment were atypical and significant when taken together, "any of these conditions standing alone might not be sufficient to create a liberty interest"). As alleged, Ms. Demarjian retained a means of communicating with Mr. Ryburn through written letters. Any alleged deprivation of other means was but temporary. And she alleges that certain other means were restored. Given these pleaded

facts, she cannot establish an atypical or substantial hardship in the temporary loss of certain means of communication with a longtime boyfriend that the Fourteenth Amendment would protect. The court thus grants the Rule 12(b)(6) motion on this claim.

## CONCLUSION

For these reasons, the court DENIES the Rule 12(b)(1) motion and Rule 12(f) request and GRANTS the Rule 12(b)(6) motion as to counts 2 and 3, leaving the First Amendment retaliation claim in count 1 to proceed [13]. Because this claim has been asserted against all defendants, and no other argument for winnowing the cast of defendants has been made, all defendants remain.

SO ORDERED.

October 6, 2026

*s/ Damon R. Leichty*
Judge, United States District Court